IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANE ILENE COHEN DURANGO,

    Plaintiff,

vs.                                                              CIV 11-0152 MCA/KBM

MATTHEW E. COHEN,

    Defendant.

# REPORT AND RECOMMENDATION ON
# MOTION TO ENFORCE SETTLEMENT AGREEMENT

    THIS MATTER is before the Court upon Plaintiff's Motion to Enforce Settlement Agreement *(Doc. 31)* and Judge Armijo's Order of Reference of the matter to me *(Doc. 52)*. Having consulted with counsel of record on June 7, 2012, I concur with their assessment that no evidentiary hearing is required. I also find that oral argument is unnecessary as the briefing of the issues is sufficiently complete. Having thoroughly reviewed the motion, the brief and exhibits submitted by the parties, I recommend the motion be granted and that appropriate sanctions be imposed against Defendant for bad faith.

    The Court and the parties are fully aware of the issues raised in this litigation involving a dispute between siblings over their deceased mother's trusts - Trust A for the benefit of Defendant Cohen and Trust B for the benefit of Plaintiff Durango. Defendant Cohen was designated as trustee for both. Because of concerns that Durango was using Trust B assets to further his position in this litigation, I granted Plaintiff's Motion for Protective Order to Protect Trust Assets *(Doc. 22)* on November 3, 2011, and directed Plaintiff to submit a proposed

protective order to my chambers for filing.  *See Doc. 29.*

On November 4, 2011, however, the parties voluntarily appeared before former state District Judge Wendy York for her to conduct a private mediation.  The parties do not dispute that an agreement was reached and that the written "Stipulation for Settlement" was executed, a copy of which is attached to the motion to enforce.  *Doc. 31-1*.  The parties and their then-counsel of record personally signed the agreement on that date.  *See id.*  The three-page document executed on the day of the mediation clearly and comprehensively sets forth the obligations of the parties.  Based upon the successful settlement negotiations, Plaintiff's counsel felt that the matters covered by the proposed protective order had become moot.  Thus, they did not submit the protective order to the Court for its entry.

As is common after reaching such an negotiated agreement, counsel for Plaintiff then drafted the closing documents called for by the stipulation and submitted them for approval on January 13, 2012 to Mr. Threet, counsel for Defendant who represented him at the mediation. "[B]ecause of a disagreement over Mr. Cohen's desires to add terms to the settlement that were not agreed to, Mr. Cohen discharged Mr. Threet and Mr. Cody Kelly was to substitute as counsel for Mr. Cohen."  *Doc. 32* at 1 (Martin E. Threet's Response to Motion to Enforce Settlement and Motion to Withdraw).  Mr. Kelly, however, did not enter an appearance in this action until five days after Mr. Threet's Response and just hours after Judge Armijo set this case down for a status conference to be held April 6, 2012.  *See Docs.33 & 34.*

As of the date of that status conference, Mr. Kelly had filed a response *(Doc. 35)* to Plaintiff's Motion to Enforce Settlement Agreement, and Plaintiff had filed her Reply *(Doc. 36)*. The clerk's minutes of that status conference reflect that Judge Armijo granted Mr. Threet's

motion to withdraw and set the Motion to Enforce Settlement Agreement for an evidentiary hearing on June 26, 2012. In early June, however, Judge Armijo vacated that hearing and referred the motion to me for my findings and recommendation. *See Docs. 53 & 54*.

## FINDINGS

Through his former attorney, Defendant has conceded the accuracy of statement of facts set forth in Paragraphs 1-11 of Plaintiff's Motion – in essence, those facts identified above. *Doc.32* at 1. Through Mr. Kelly, Defendant also admitted the recitation in paragraph 12 that when Mr. Kelly took over representation of Defendant, Mr. Threet provided his new counsel with Plaintiff's drafts of the closing documents. *Doc. 35* at 1.

With regard to Paragraph 13, Mr. Kelly acknowledged that he had requested additional time to consult a trust attorney to effectuate the settlement, but disputes that he agreed to provide a copy of the current Vanguard account statement to Plaintiff in January 2012. Instead, Mr. Kelly states that he merely represented that he would "recommend" to his client that he do so. *Doc. 35* at 1. Defendant fails to contradict Plaintiff's assertion that Mr. Cohen submitted no proposed revisions to Plaintiff's drafts of the closing documents despite "ample opportunity."

Indeed, it took more than four months after the successful mediation for Defendant to come forth with any written proposal, and then only in response to the instant motion to enforce. Mr. Kelly attached two documents as exhibits to the Response: (A) a Settlement Agreement and Release of Claims drafted by defense counsel that Mr. Cohen contends "more accurately reflects the stipulations for settlement. . ."; and (B) a Warranty Deed "wherein Mrs. Cohen placed property in the Selma Bandel Cohen Revocable Living Trust." *Id.* at 1-2. Defendant maintains that "[i]t is necessary to actually effectuate a title transfer from the living trust to Trust A," and

3

that Plaintiff's drafted documents failed to take that into account. *Id* at 2.

Defendant's proffered version of the agreement, however, differs ***significantly*** from the terms of the written stipulation for settlement executed November 4, 2011. As Plaintiff notes, pursuant to the mediation before Wendy York, the parties agreed that

> Matthew Cohen owes Plaintiff $48,000.00 and must also transfer Trust B's Vanguard account into Jane Durango's name. Further, that account must contain at least $169,232.20 minus only any documented investment losses or documented ordinary and necessary expenses related to the property at 3716 Mesa Verde NE charged equally to Trust A and Trust B prior to November 4, 2011.

*Doc. 31* at 4; *see Doc. 31-1*. But Defendant's draft of a final agreement: (1) fails to even mention the Vanguard account, much less Mr. Cohen's obligations with regard to that account; (2) fails to indicate that the "no contact" provision applies as to the parties and their immediate family; (3) and imposes many material terms not shown to have been contemplated by the parties on November 4, 2012. *Compare Doc. 35-1* (Defendant's Draft) *with Doc. 31-1* ("Stipulation for Settlement"). In short, I agree with Plaintiff that Defendant has "proposed a new and different settlement, highly prejudicial to Plaintiff." *Doc. 36* at 2.

Defendant's "buyer's remorse" over the terms he accepted at the mediation cannot undo the deal he voluntarily made. As a trained attorney, although now disbarred in New Mexico, Mr. Cohen undoubtedly possesses the necessary knowledge to understand the all of the terms of the agreement to which he agreed. He also surely must have understood at the time of the mediation that the provisions of the "Stipulation for Settlement" were and are binding. Moreover, his former attorney so advised him; Mr. Threet acknowledged in his motion to withdraw that this action was taken "because of . . . Mr. Cohen's desires to add terms to the settlement that were not

agreed to" by the Plaintiff.  *Doc. 32* at 1.

It has become clear that Mr. Cohen is delaying the inevitable in an attempt to thwart Plaintiff from obtaining the benefits of her bargain.  I find that the Stipulation for Settlement reached and executed on November 4, 2012 is fully binding on the parties and must be enforced.  In the absence of enforcement, Plaintiff's rights will be, and may have already been, prejudiced.  As Plaintiff argues in her Reply in support of her motion for sanctions, Defendant does not dispute that

> a) Cohen has cashed checks drawn on Trust B totaling $35,184.42 between June 1, 2011 and April 30, 2012,
>
> b) Cohen has cashed checks totaling $18,501.26 between the settlement and April 30, 2012,
>
> c) all checks written from Trust B from April 2011 through April 2012 were made out to either Defendant (personally or as Trustee of the Trust) or his wife, Dedrie;
>
> d) check numbers 1052, 1057, 1059 and 1060 are still unaccounted for, thus, the amount and number of checks written from Trust B may be even higher;
>
> e) Cohen violated the no contact provision of the settlement agreement and the Stipulated No Contact Order by contacting Plaintiff's son, Pablo Durango-Cohen on May 10, 2012.

*Doc. 54* at 3-4.  Indeed, on June 6, 2012, I entered an Order specifically finding that the November 4, 2011 Stipulation for Settlement called for Mr. Cohen to resign as trustee of Trust B of the revocable living trust no later than January 11, 2012.  *See Doc. 57* at 1.  I further found that not only had he failed to do so, Mr. Cohen has continued to write checks to himself from Trust B.  *Id.*  I therefore removed him as trustee of Trust B and required that he provide to counsel for Plaintiff (the successor trustee) "all checkbooks and all checks relating to Trust B's assets, including but not limited to all checkbooks and all checks for Trust B's Vanguard accounts and

checks numbers 1052, 1057, 1059, and 1060 for Trust B's Vanguard accounts [and] the May 2012 Vanguard account statement for Trust B by June 11, 2012." *Id.* at 2. Further, on June 8, 2012, I confirmed my November 3, 2011 Order granting Plaintiff's Motion to Protect Trust Assets. *See Doc. 58.* My Orders of June 6 and 7 both warned Defendant of the imposition of sanction in the event of any violations.

Apparently undaunted, Defendant Cohen apparently changed course to avoid his court-ordered obligations. Relying on the old idiom that "the best defense is a good offense," Defendant apparently hired yet another attorney willing to attack the authority of the federal court. *See Doc. 60.* Defendant's new counsel, David Streubel, filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction on June 14, 2012 *(Doc. 61)*, that was denied by Judge Armijo the following day *(Doc. 62)*. As she observed,

> Simply because the case has settled for a sum less than $75,000 does not deprive this Court of jurisdiction it has had in this case from its inception. In fact, it is difficult to imagine how Defendant, an individual trained in the law, or his apparently new counsel could find that the Motion was "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED. R. CIV. P. 11(b)(2). More likely, Defendant's Motion appears to be the latest in a series of tactics to delay, disobey, or otherwise frustrate the Court's orders.

*Doc. 62* at 3.

## RECOMMENDATIONS

I therefore recommend to Judge Armijo that she not only enforce the settlement as accurately set forth in the Plaintiff's drafts of closing documents, but impose significant sanctions against Defendant Cohen, including all attorney fees and costs incurred from the settlement date of November 4, 2012 to today. I would also recommend cautioning Defendant that even greater sanctions may be imposed, including judgment against him, should he disregard any of the orders

6

entered in this case.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE